**Charles Lee HOBSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 483S147.**

Supreme Court of Indiana.

Dec. 5, 1984.

⟐188(2)

Kenneth L. Anderson, Highland, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Attempted Murder, a class A felony, Ind.Code §§ 35–41–5–1 and 35–42–1–1 (Burns 1979), and was sentenced to twenty (20) years imprisonment. His direct appeal raises seven (7) issues for our review, as follows:

(1) Whether the evidence is sufficient to sustain the conviction;

(2) Whether the trial court erred when it denied Defendant's motion for a directed verdict;

(3) Whether the trial court erred in denying Defendant's motion for mistrial predicated upon an allegation that the State improperly challenged all blacks on the jury;

(4) Whether the trial court erred in admitting into evidence a tape recording;

(5) Whether the trial court erred in denying Defendant's motion for a change of judge;

(6) Whether the trial court improperly influenced the State to try the case for the third time after juries in the first two trials had been unable to reach a verdict;

(7) Whether the trial court erred when it sustained the State's objection to evidence of the victim's reputation for peace and quietude.

The record disclosed that on March 14, 1981, Defendant and his girlfriend (subsequently, his wife) had a domestic quarrel, and the police were called. Officer Anthony Trojnar was dispatched to Defendant's home where he encountered Lorraine Grady, Defendant's girlfriend and the mother of his four children. According to Trojnar's testimony, Grady told him that the Defendant was inside the home and that she feared for the safety of their children. Her testimony was that she wanted to get the children and leave the house. Defendant answered the front door. While Grady prepared the children to leave the house, Trojnar talked to the Defendant. Both the Defendant and Grady testified that Trojnar hit the Defendant with his night stick and choked him, but Trojnar denied carrying a night stick and testified that he merely placed his hand on Defendant's chest and guided him to a sofa. Subsequently, Trojnar took Grady and the four children to Grady's mother's home.

Shortly thereafter, Defendant called the police station to complain that an officer had assaulted him. He did not, however,

wish to file charges. The next day, Defendant went to the police station and complained about his treatment at the hands of Officer Trojnar. The officer with whom Defendant spoke noticed that Defendant had a bruise or blood on the left side of his head.

Later in the day, Defendant again called the station and said that the officer who had assaulted him was at his front door. He wanted to know if the officer in car number 88 was supposed to be there. Trojnar, the driver of car number 88, had not been dispatched to Defendant's home, and he denied having gone there on the day following the domestic quarrel. The officer who took the call testified that Defendant threatened to kill Trojnar.

Still later that evening, Trojnar and the Defendant encountered each other at a service station in Gary, Indiana. A scuffle ensued, and Defendant stabbed Trojnar. The two men's versions of the events leading to the stabbing are quite disparate. The Defendant testified that, as he was driving to his mother-in-law's home, he saw Officer Trojnar at the service station and Trojnar motioned for him to come over. Defendant did so, and Trojnar pulled him out of his car, verbally abused him, said he was going to kill him, and drew his gun. Defendant then attempted to free himself from Trojnar's grasp by stabbing him. Trojnar testified that while he was talking to police headquarters, Defendant came up to his car, complained about the events of the previous night, slapped the side of the patrol car, and was told that if he did not desist he would be arrested. Trojnar then handcuffed one of Defendant's hands and a struggle began. Only after Defendant had stabbed him did Trojnar draw his gun and fire several shots at the departing Defendant, none of which hit their target. The Defendant subsequently surrendered to police.

### ISSUE I

■ Defendant first argues that the evidence is insufficient to sustain the conviction because it failed to prove one of the essential elements of the crime, i.e. that he intended to murder Trojnar. Our standard of review upon such claim is as follows:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ The Defendant admits stabbing Trojnar, but claims that the evidence shows that he did so in self-defense. When there is sufficient evidence to interject the issue of self-defense into the case, the burden is on the prosecution to negate the defense beyond a reasonable doubt by affirmatively rebutting the defendant's evidence, if any, or by showing within its case-in-chief that the defendant was not acting in self-defense when the crime occurred. *McCann v. State*, (1984) Ind., 466 N.E.2d 421, 422; *Palmer v. State*, (1981) Ind., 425 N.E.2d 640, 643–644. If substantial evidence of probative value exists from which the trier of fact could conclude, beyond a reasonable doubt, that defendant was not acting in self-defense, the verdict may not be altered. *Id.; Palmer v. State*, 425 N.E.2d at 643.

■ Although Defendant's version of the circumstances surrounding the stabbing include a coincidental encounter with Trojnar at the service station and an initiation of the conflict by Trojnar, as well as a necessity to defend himself, there was evidence that Defendant had threatened to kill Trojnar and that it was he who initiated the fight. Moreover, Defendant used a knife to inflict five stab wounds, one of which nicked the pericardium lining overlying the heart. From these circumstances a jury could reasonably infer that Defendant intended to kill Trojnar.

Although the evidence was conflicting, there was substantial evidence of probative value consistent with an intentional attempt by Defendant upon Trojnar's life at a time when he was not in fear for his own life or physical well-being.

## ISSUE II

■ Following the State's presentation of its case, Defendant moved for a directed verdict, arguing that the evidence was insufficient to establish a *prima facie* showing that Defendant knowingly or intentionally attempted to kill Trojnar. The motion was denied, and Defendant assigns such ruling as reversible error. Defendant, however, has failed to preserve error for appeal on this issue, inasmuch as he did not stand upon his motion but introduced evidence in his defense. *Havens v. State*, (1981) Ind., 429 N.E.2d 618, 621.

## ISSUE III

■ Defendant argues that he was denied a fair trial by an impartial jury when the State, in exercising its peremptory challenges, excused all blacks from the jury; hence, he contends that the trial court erred in denying his motion for mistrial predicated on that ground. Defendant relies primarily upon *Commonwealth v. Soares*, (1979) 377 Mass. 461, 387 N.E.2d 499, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110, in which the Supreme Court of Massachusetts, basing its decision on the Sixth Amendment right to a fair trial, ordered new trials for three black men convicted of first degree murder of a white man, holding that the defendants had shown a *prima facie* case that the prosecutor's use of his peremptory challenges was designed to exclude persons from the jury on the basis of race and that the trial court's failure to allow a hearing on the issue deprived defendants of their constitutionally protected right to trial by a jury fairly drawn from the community.

1. `Mays v. State*, (1984) Ind., 469 N.E.2d 1161; *Hoskins v. State*, (1982) Ind., 441 N.E.2d 419; *Swope v. State*, (1975) 263 Ind. 148, 156, 325

Indiana cases,[1] however, have followed the holding in *Swain v. Alabama*, (1965) 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, when confronted with this issue. In *Swain*, the United States Supreme Court held that using peremptory challenges to strike black persons from the jury in a particular case did not constitute a violation of equal protection guarantees. The Court noted that an equal protection challenge might be sustained when in case after case the prosecutor "is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries." *Id.* at 223, 85 S.Ct. at 837, 13 L.Ed.2d at 774.

Although the *Swain* analysis was directed to an equal protection challenge, we find it equally applicable to Defendant's Sixth Amendment challenge, and, in addition, we do not believe that *Swain's* precedential value is altered by the Supreme Court's holding in *Taylor v. Louisiana*, (1975) 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, upon which Defendant further relies. In *Taylor*, the United States Supreme Court held that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." 419 U.S. at 528, 95 S.Ct. at 697, 42 L.Ed.2d at 697. Defendant has not claimed that the jury was selected from a non-representative cross section of the community. Furthermore, *Taylor* does not stand for the proposition that the jury ultimately selected must mirror the distinctive groups of the community.

Finally, we note that there is no need for the prosecution to explain its reasons for the exercise of a peremptory challenge. *Mays v. State*, (1984) Ind., 469 N.E.2d 1161; *Hoskins v. State*, (1982) Ind., 441 N.E.2d 419, 422. In *Swain* the Court observed, "The essential nature of the peremptory challenge is that it is one exercised without

N.E.2d 193, 196–197; *Williams v. State*, (1974) 160 Ind.App. 549, 312 N.E.2d 526.

a reason stated, without inquiry and without being subject to the court's control." 380 U.S. at 220, 85 S.Ct. at 836, 13 L.Ed.2d at 772. In the case at bar, the Prosecutor, at the hearing on the motion for mistrial and at the hearing on the motion to correct errors, stated his reasons for challenging six black jurors. Although he admitted that race was one factor in reaching his decisions, he stated that other compelling reasons for challenging the jurors became apparent during *voir dire* examination.

Inasmuch as Defendant has neither claimed nor shown that the prosecutor had, over a period of time, totally eliminated blacks from juries by the systematic use of peremptory challenges against those who had survived challenges for cause, we find no error in the trial court's ruling.

### ISSUE IV

Defendant argues that the trial court abused its discretion when it admitted into evidence a tape recording of police radio and telephone transmissions pertinent to this case. Specifically, he objects to a portion of the recording which chronicles a conversation between Trojnar and Officer Hlas, arguing that a voice in the background, which the prosecution implied was Defendant's, was unintelligible and would lead to jury speculation as to its contents. During the portion of the recording to which Defendant objects, Officer Hlas asked Trojnar if he needed assistance; Trojnar responded that he did not. A voice can be heard in the background, but the words are unintelligible.

In *Lamar v. State*, (1972) 258 Ind. 504, 513, 282 N.E.2d 795, 800, we held that in order for a tape recording to be admissible as evidence, it must be "of such clarity as to be intelligible and enlightening to the jury." Taken as a whole the tape must be of such clarity that it does not lead to jury speculation as to its contents. *Pettit v. State*, (1979) 272 Ind. 143, 148, 396 N.E.2d 126, 130. The trial court has wide discretion with respect to whether the *Lamar* guidelines have been met. *Winningham v. State*, (1982) Ind., 432 N.E.2d 24,

27. Here the trial court had listened to the tape recording on four previous occasions and determined that it was admissible. Moreover, we have listened to the recording and find that it is immaterial whose voice could be heard in the background. It is unlikely that the background voice would have misled the jury or have caused it to speculate as to its subject matter. This case is readily distinguishable from *Lamar* in which the prosecution alleged that the tape recording contained a confession by the appellant. In that case, the recording was of such poor quality that it was impossible to determine whether the appellant was or was not confessing, and we held that the jury would be inclined to believe that the appellant was confessing, else the State would not have sought the admission of the tape into evidence. Here, we simply have a background voice which, although unintelligible, may or may not be that of the Defendant; and the tape recording was of a routine police communication.

Finally, Officer Hlas testified, without objection, that while he was talking to Trojnar, he could hear a male voice yelling in the background. He could not identify either the speaker or the words spoken. The tape does no more than corroborate Officer Hlas' testimony. We find no error in the trial court's ruling.

### ISSUE V

Defendant argues that because Officer Trojnar, the complaining witness, had acted as a security guard in Judge Letsinger's courtroom, he was denied a trial by an impartial judge and assigns as reversible error the trial court's denial of his motion for a change of judge. Defendant stated in his motion that he had been informed, prior to his first trial, that Trojnar had once been assigned to Judge Letsinger's courtroom as a security guard. At that time he was asked if that would create any "problem." Later, however, Defendant claims that it came to his attention that Judge Letsinger himself had hired Trojnar and that he had not been assigned there in the course of his regular duties.

Ind.R.Crim.P. 12 provides, in pertinent part:

> "Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for an abuse of discretion."

We find no verification of the motion "by the party himself." In addition, the motion does not contain the specific statements required by Crim.R. 12. *See McChristian v. State*, (1979) 272 Ind. 57, 59, 396 N.E.2d 356, 358.

■■■■ Defendant also concedes that the ruling on a motion for a change of judge will be set aside only for an abuse of discretion. Ind.R.Crim.P. 12; *McChristian v. State*, 272 Ind. at 59, 396 N.E.2d at 358; *Yates v. State*, (1982) Ind.App., 429 N.E.2d 992, 994. Defendant bears the burden of showing a clear abuse of discretion by the trial court. *McChristian v. State*, 272 Ind. at 59; 396 N.E.2d at 358. Officer Trojnar testified at the hearing on the motion to correct errors that he had worked a total of 20–25 hours over a period of two or three days as a security officer in Judge Letsinger's courtroom. He had received his instructions and paycheck from the court bailiff and did not know whether Judge Letsinger had had anything to do with his employment. At no time did he have any conversations or personal contact with the Judge. Defendant has made no showing that Judge Letsinger's prior contact with Officer Trojnar resulted in his giving Trojnar's testimony undue credence.

## ISSUE VI

Defendant argues that the trial court improperly influenced the State to prosecute this cause for a third time. The hearing on the motion to correct errors disclosed that during the week prior to the third trial in this case (the first two had resulted in hung juries), the deputy prosecutor and Defendant's attorney had discussed plea offers which Defendant refused. Thereafter, the Prosecutor told defense counsel that he was considering entering a *nolle prosequi* in the case and that he was going to so inform Judge Letsinger. Later that day Prosecutor Wolf again called defense counsel and told him that he had changed his mind and was going to proceed with the case. Wolf recalled that in his discussion with Judge Letsinger, he told the judge that he had some problems with the case, and that the Judge had responded that in cases such as this one, in which there has been a great deal of publicity, the best approach was to present the case to the jury and let it decide the outcome.

■■■■ Defendant insists that the trial court's discussion of the case with the prosecutor violated the Code of Judicial Conduct, constituted a judgment on the merits of the case, and was an improper *ex parte* communication. At no time prior to trial, however, did Defendant object or move for a change of judge on these grounds. One may not await the outcome of a trial and then complain that he was prejudiced.

> "Unless there is fundamental error, a defendant cannot be allowed to gamble on the possibility of a favorable verdict by sitting idly by, making no objection to matters he considers prejudicial, and then attempt to assert those matters as error after an unfavorable disposition of his case."

*Dodson v. State*, (1978) 269 Ind. 380, 383, 381 N.E.2d 90, 93. Finding no fundamental error, *see Nelson v. State*, (1980) 274 Ind. 218, 409 N.E.2d 637, 638, we hold that Defendant is bound by his election to proceed to trial, without objection as to the matter he now proposes to present.

## ISSUE VII

■ During the testimony of Officer Phil Strong, defense counsel attempted to elicit an opinion regarding Trojnar's reputation for peace and quietude. The court, however, sustained the State's objection, and Defendant assigns such ruling as reversible error.

Defendant claimed that he stabbed Trojnar in self-defense.

> "[W]hen there has been evidence introduced that the accused was exercising his right of self-defense, the decedent's reputation and character for peace and quietude, *if known to the accused at the time he acted,* becomes relevant upon the issue of whether or not he believed himself to be in danger and the reasonableness of his assessment." (emphasis added).

*French v. State,* (1980) 273 Ind. 251, 257, 403 N.E.2d 821, 825. The trial court did not err in sustaining the State's objection, inasmuch as the Defendant made no showing nor offer to show that he was aware of Trojnar's reputation for peace and quietude at the time he acted.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.