**Harry SERING, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–1184A332.**

Court of Appeals of Indiana, Second District.

Jan. 30, 1986.

William B. Powers, Indianapolis, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee (plaintiff below).

SHIELDS, Judge.

Defendant-appellant Harry Sering appeals his conviction of operating a vehicle with a blood alcohol content (BAC) of .10%, a class D felony and operating a vehicle while intoxicated, a class A misdemeanor.[1]

Sering contends there is insufficient evidence to sustain his conviction on the issue of probable cause and on the elements of intoxication and BAC of .10%.

The State, in its brief, suggests the trial court committed fundamental error in entering judgments of conviction and sentencing Sering for the two alcohol related driving offenses; by entering judgments of conviction for operating a vehicle with a BAC of .10%, both as a class C misdemeanor and as a class D felony; and, in entering a judgment against Sering for the infraction of driving across center line.

Sering's conviction for operating a vehicle with BAC of .10% is reversed; the remaining convictions and the infraction judgments are affirmed.

### FACTS

The following evidence favorable to the State was adduced at trial: Officer Jarrett of the Indianapolis Police Department observed Sering around 4:20 a.m. on the morning of March 3, 1984. Sering's car was traveling on East Washington Street in Indianapolis at 45–50 miles per hour in a 35 mile per hour zone. The car was weaving from side to side, crossing the center line, and drifting sharply to the right. Sering's car crossed the center line seven times in a ten block distance along Washington Street. Officer Jarrett turned on his red strobe lights, spotlight, and siren and attempted to stop Sering for three blocks before Sering turned into a White Castle restaurant parking lot.

According to Officer Jarrett, Sering exited his car "limply". His speech was thick, slurred, and repetitive. His eyes were glassy and his clothes were rumpled. He stumbled and staggered while attempting

---

1. The relevant statutes in effect at the time of the offense read as follows:

Ind.Code Ann. § 9–11–2–1 (Burns Supp.1985) "A person who operates a vehicle with ten-hundredths percent (.10%), or more by weight of alcohol in his blood commits a class C misdemeanor."

Ind.Code Ann. § 9–11–2–2 (Burns Supp.1985) "A person who operates a vehicle while intoxicated commits a class A misdemeanor."

Ind.Code Ann. § 9–11–2–3 (Burns Supp.1985) "A person who violates section 1 or section 2 of this chapter commits a class D felony if:

1) he has a previous conviction of operating while intoxicated; and

2) the previous conviction of operating while intoxicated occurred within the five (5) years immediately preceding the occurrence of the violation of section 1 or section 2 of this chapter."

to walk and stand. There also was a strong odor of alcohol on Sering's breath and person. In addition, Officer Jarrett testified he observed empty beer cans in Sering's car and found a can of beer in Sering's left coat pocket. A license check revealed Sering's operator's license had been suspended since January 19, 1984. Sering was unable to produce evidence of vehicle registration. Finally, a check of the license plate on the vehicle showed the plate had been issued to a different car.

Finally, Officer Jarrett administered a three part field sobriety test which Sering failed to satisfactorily complete. Officer Jarrett then explained the Indiana implied consent law and offered Sering a breath test which he agreed to take. Officer Jarrett transported Sering to police headquarters where he administered the test. The test results showed a BAC of .17%.

Sering was charged and found guilty of operating a vehicle with BAC .10%, as a class D felony; operating a vehicle while intoxicated, a class A misdemeanor; driving while license suspended, a class A misdemeanor;[2] speeding, a class C infraction;[3] driving across center line, a class C infraction;[4] and improper plates, a class C infraction.[5]

The trial court sentenced Sering to two (2) years for operating a vehicle with BAC .10%, as a class D felony; one (1) year for operating a vehicle while intoxicated, as a class A misdemeanor;[6] and 365 days for driving while license suspended, as a class A misdemeanor. All sentences were ordered served concurrently.[7]

### I.

### A.

■ On appeal Sering argues the evidence at trial failed to establish the police officer had probable cause to initially stop Sering and, therefore, his convictions should be reversed.

This argument is meritless. Probable cause for the initial stop was never an issue before the trial court. It is not an element of any of the offenses of which Sering was convicted nor was probable cause or the initial stop made an issue by Sering. He neither moved to suppress any evidence nor did he object to the admission of any evidence on the grounds the evidence was the product of an improper initial stop. An appellant may not raise an issue on appeal based on grounds not raised at trial. *Beland v. State*, 476 N.E.2d 843 (Ind.1985). Indiana law requires an appellant to object and specifically state the grounds for the objection in order to preserve an issue for appeal. *Smith v. State*, 475 N.E.2d 1139 (Ind.1985).

### B.

Sering also asserts the evidence at trial was insufficient to sustain his conviction for operating a vehicle while intoxicated and operating a vehicle with BAC .10%. Upon a review for sufficient evidence, this court will neither weigh the evidence nor judge the credibility of the witnesses. Rather, we examine only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If, from this examination, there is substantial evidence of probative value to support the conclusion the defendant is guilty beyond a reasonable doubt, the conviction will not be set aside. *Hobson v. State*, 471 N.E.2d 281 (Ind.1984).

Sering raises two factual allegations as the basis of his sufficiency challenge. Ser-

---

**2.** Ind.Code Ann. § 9–1–4–52 (Burns Supp.1985).

**3.** Ind.Code Ann. §§ 9–4–1–57(b), 127.1 (Burns Supp.1985).

**4.** Ind.Code Ann. § 9–4–1–63 (Burns 1980); Ind. Code Ann. § 9–4–1–127.1 (Burns Supp.1985).

**5.** Ind.Code Ann. § 9–1–4–20 (Burns 1980); Ind. Code Ann. § 9–1–4–53(c) (Burns Supp.1985).

**6.** The trial court originally committed a sentencing error with respect to this offense. At a subsequent sentence review, the court corrected the error and entered the present sentence.

**7.** Sering's driving privileges were also suspended for two years. No fines or penalties were imposed for the remaining offenses.

ing testified: 1) he was not given a field sobriety test other than walking from one vehicle to another and 2) he was given two breath tests to measure BAC. He further testified the first test gave a result of .09% and it was not until a second test was administered that the .17% result was obtained. Officer Jarrett testified Sering was given a three part field sobriety test and only one breathalyzer test. Sering argues his contradictions of Officer Jarrett's testimony created a reasonable doubt which renders the evidence insufficient to sustain his convictions on the alcohol related driving offenses.

■ Sering's sufficiency argument would have us judge his and Officer Jarrett's credibility as witnesses and weight the conflicting evidence. This we cannot do. The evidence most favorable to the State reveals Sering's car was weaving from side to side, crossing the center line, and drifting sharply to the right. Sering's speech was thick and slurred, his eyes glassy, his clothes rumpled, and he smelled of alcohol. Furthermore, Sering failed a three part sobriety test and his BAC verifier test results were .17%. This evidence is sufficient for a reasonable fact finder to find Sering guilty of the two alcohol related offenses beyond a reasonable doubt. *See Garland v. State,* 452 N.E.2d 1021 (Ind.App.1983); *Johnson v. State,* 450 N.E.2d 123 (Ind.App.1983); *Steward v. State,* 436 N.E.2d 859 (Ind.App.1982).

### II.

The State, in its brief, suggests a number of fundamental errors with respect to Sering's convictions and sentences.

### A.

The State questions the propriety of Sering's separate convictions and sentences

for operating a vehicle with BAC of .10%, I.C. § 9–11–2–1 and operating a vehicle while intoxicated, I.C. § 9–11–2–2. Relying on the doctrine of former jeopardy, the State argues that a person violating I.C. § 9–11–2–1 would also violate I.C. § 9–11–2–2 and, therefore, cannot be convicted of both offenses if the convictions arise from the same criminal act or course of conduct. The State finds support for this contention in the definition of "intoxication":

> " 'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation there was ten hundredths percent (.10%), or more, by weight of alcohol in the person's blood."

Ind.Code Ann. § 9–11–1–7 (Burns Supp. 1985).[8] Therefore, according to the State, a violation of I.C. § 9–11–2–1 is prima facie a violation of I.C. § 9–11–2–2, and convictions for both offenses may not stand. For a reason other than that argued by the State, we agree.

■ The Double Jeopardy Clause of the Fifth Amendment consists of three guarantees:

(1) "It protects against a second prosecution for the same offense after acquitted,

[ (2) I]t protects against a second prosecution for the same offense after conviction, [and]

[ (3) I]t protects against multiple punishment for the same offense."

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). Here we are concerned with the third guarantee which protects against multiple punishments for the same offense.

In *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) the Supreme Court addressed the question whether multiple punishments for the offenses of

---

**8.** The State argues Ind.Code Ann. § 9–11–1–7 (Burns Supp.1985) applies to Ind.Code Ann. §§ 9–11–2–1 and 9–11–2–2 and, consequently, "a violation of [I.C. §] 9–11–2–1 is prima facie a violation of [I.C. §] 9–11–2–2." However, this argument is untenable because the phrase "prima facie evidence of intoxication," defined within I.C. § 9–11–1–7, is enclosed in quotation marks. Consequently, the definition applies to only those statutes which contain the phrase as, for example, Ind.Code Ann. § 9–11–4–3 (Burns Supp.1985). Neither I.C. § 9–11–2–1 nor I.C. § 9–11–2–2 include this phrase.

first degree robbery and armed criminal action violate the Double Jeopardy Clause of the Fifth Amendment. In determining the Constitution does not preclude imposition of the two punishments, the Court stated, "The Double Jeopardy Clause does no more than prevent the sentencing court from prescribing a greater punishment than the legislature intended." 103 S.Ct. at 678. The Court found that, although the Missouri Supreme Court construed the two statutes at issue as defining the same crime, the legislature intended punishments for violation of the statutes to be cumulative:

"[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* [the *Blockburger* test] is not a constitutional rule requiring courts to negate clearly expressed legislative intent. . . .

\* \* \* \* \* \*

"Where a legislature, as here, specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."

103 S.Ct. at 679.

■ Our inquiry, then is one of ascertaining whether there is clearly expressed legislative intent that cumulative punishment may be imposed for conduct which violates the statutory prohibition against operating a vehicle with BAC of .10% and operating a vehicle while intoxicated. One means of deriving legislative intent involves application of the *Blockburger* test to ascertain the "sameness" of two offenses:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299 at 304, 52 S.Ct. 180, 182, 76 L.Ed. 306.[9] The assumption underlying the *Blockburger* test is that the legislative body ordinarily does not intend to punish the same offense under two distinct statutes. *Whalen v. United States*, 445 U.S. 684, 692–93, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). Therefore, absent some express legislative expression, cumulative punishment is not authorized where two statutory provisions proscribe the same conduct under *Blockburger*.

■ Operating a vehicle with BAC of .10%, I.C. § 9–11–2–1, requires 1) the operation of a vehicle, 2) by an operator with ten-hundredths percent (.10%), or more, by weight of alcohol in his blood. The offense of operating a vehicle while intoxicated requires 1) the operation of a vehicle, 2) by an operator who is intoxicated. I.C. § 9–11–2–2. The term "intoxicated", as defined by I.C. § 9–11–1–5 (Burns Supp.1985), means under the influence of alcohol, controlled substances, or drugs "such that there is an impaired condition of thought and action and the loss or normal control of a person's faculties to such an extent as to endanger any person." Thus, the BAC of .10% offense has a specific BAC as an element that distinguishes it from the offense of operating a vehicle while intoxicated. Conversely, the distinguishing element in the offense of operating a vehicle while intoxicated is the element of impairment which is not necessary for conviction of operating a vehicle with BAC of .10%. A defendant may be found guilty of operating a vehicle while intoxicated irrespective of the defendant's blood alcohol content, and further, without ingesting alcohol at all. Thus, we find the offenses of operating a vehicle while intoxicated and operating a vehicle with BAC

**9.** Indiana adopted this test in *Elmore v. State*, 269 Ind. 532, 382 N.E.2d 893 (1978).

of .10% are not the "same offense" under a *Blockburger* analysis.

However, our effort to determine legislative intent does not end with the application of the *Blockburger* test.[10] We must also examine the relevant offenses in light of Ind.Code Ann. § 35–38–1–6 (Burns 1985). That section prohibits cumulative convictions and punishments where defendants are convicted of both greater and lesser included offenses. "Included offense," as defined by Ind.Code Ann. § 35–41–1–16 (Burns 1985), is an offense that:

1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
3) differs from the offense charged only in the respect that a less serious harm or risk or harm to the same person, property, or public interest, or a lesser kind of culpability is required to establish its commission."

 Section one is inapplicable insofar as the offenses each require a separate distinct element. The fact the offenses possess distinguishing elements establishes the offense of operating with BAC .10% is not an inherently included offense.[11] Section one is also inapplicable insofar as it codifies the concept of factually included offenses. Factually included offenses occur when a lesser offense that is not an inherently included offense is charged in the charging instrument due to the manner in which the greater offense is charged. *McGill v. State*, 465 N.E.2d 211 (Ind.App. 1984); *Roddy v. State*, 182 Ind.App. 156, 394 N.E.2d 1098 (1979). The factual allega-

tions contained in the instant charge of operating a vehicle while intoxicated do not state that Sering's blood alcohol content was at least .10% at the time of the alleged offense. Failure to include this essential element of operating a vehicle with BAC of .10% is fatal to the argument that it was a factually included lesser offense of operating a vehicle while intoxicated. *See McGill v. State*, 465 N.E.2d 211 (Ind.App. 1984); *Allison v. State*, 157 Ind.App. 277, 299 N.E.2d 618 (1973). Thus, operating a vehicle with BAC of .10% is neither an inherently included lesser offense nor a factually included offense in this instance.

Clause two is also inapplicable. Neither of the crimes with which we are concerned is an attempt offense.

Clause three, however, is applicable. That clause makes an offense a lesser included offense if it differs from another "only in the respect that a less serious ... risk of harm ... to the public interest ... is required to establish its commission." I.C. § 35–41–1–16(3). The risk of harm to the public interest in the operation of a vehicle while intoxicated is readily apparent and well documented. That risk is, of course, the cost in lives and property occasioned by the intoxicated driver. However, that is the same risk implicit in the BAC of .10% offense.

 A state, by virtue of its police power, has broad authority to create criminal offenses to protect and promote the public welfare. However, the exercise of that power is not unlimited. One limitation is the substantive due process concept that conduct may not be punished unless it bears a substantial relationship to injury to the public. We perceive no difficulty concluding the .10% figure is rationally related

**10.** In *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Court considered the issue whether a defendant could be cumulatively punished for conspiracy to import marihuana and conspiracy to distribute marihuana. The Court concluded the statutes defining the offenses did not proscribe the "same offense" under *Blockburger*, and presumably, cumulative punishment could be assessed. However, the Court did not stop at this point, but searched the legislative history for indica-

tions of legislative intent contrary to the results of application of the *Blockburger* test. *Id.* at 341–42, 101 S.Ct. at 1143–44.

**11.** By definition, if the greater offense cannot be committed without also committing the lesser offense, the lesser offense is an inherently included offense. *Jones v. State*, 438 N.E.2d 972, 974 (Ind.1982).

to the state's legitimate exercise of its police power just as the California Supreme Court had no difficulty in a constitutional challenge to its BAC law. *See Burg v. Municipal Court for Santa Clara Judicial District,* 35 Cal.3d 257, 198 Cal.Rptr. 145, 673 P.2d 732 (1983). However, that is not the issue here. What is in issue is the harm or risk of harm which gives rise to the rational relationship between the prohibited conduct and the police power. The harm or risk of harm is the same threat to the driver and to the public whether occasioned by a driver who is intoxicated or by a driver with a BAC of .10%.

This identity of harm or risk of harm is evidenced by the legislative enactment of Ind.Code Ann. § 9–11–1–7 (Burns 1985).

That section reads:

" 'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation there was ten hundredths percent (.10%), or more, by weight of alcohol in the person's blood."

I.C. § 9–11–1–7. Although this definitional statute does not impact on the operating while intoxicated statute because the latter does not include within its terms the phrase "Prima facie evidence of intoxication", it nevertheless evidences legislative judgment that a driver with a BAC of .10% is commonly impaired.

Having found identity of harm or risk of harm in the two subject alcohol related driving offenses, we must determine whether one risk is greater than the other. We conclude the legislature has determined the risk occasioned by the intoxicated operator is greater than the risk occassioned by the BAC of .10% operator. This legislative intent is evidenced by the disparate classification of the two offenses; operating while intoxicated is a class A misdemeanor while operating with a BAC of .10% is a class C misdemeanor. This disparity is explained by the fact an intoxicated driver has demonstrated an inability to operate a vehicle in a prudent manner. Consequently, we can hypothesize the rationality in the difference in classification if we recognize some individuals may not be legally intoxicated, manifesting an impaired condition and loss of control to such an extent that others are endangered,[12] with a BAC of .10%. If that is a valid assumption, and we believe it is,[13] the greater harm or risk of harm occurs in the operation of a vehicle while intoxicated.

■ We conclude, therefore, that operating a vehicle with BAC of .10% is a lesser included offense of operating a vehicle while intoxicated because the former offense differs from the latter offense in that a less serious risk of harm to the public interest is required to establish its commission.

■ In light of the foregoing analysis, we find the legislature did not intend the imposition of cumulative convictions and punishments when the same act constitutes a violation of the two relevant statutory provisions. Therefore, we order the cause remanded with instructions to vacate Sering's conviction and sentence for operating a vehicle with BAC .10%.

### B.

The State claims the trial court committed fundamental error in entering separate convictions for operating a vehicle with a BAC of .10%. However, because we vacate the judgment on the BAC offense we do not consider this issue.

---

12. *See* Ind.Code Ann. § 9–11–1–5 (Burns Supp. 1985).

13. In *Burg v. Municipal Court for Santa Clara Judicial District,* 35 Cal.3d 257, 198 Cal.Rptr. 145, 673 P.2d 732 (1983), the California Supreme Court took judicial notice of the statement of Dr. Roger P. Maickel during hearings before the subcommittee on Courts of the Senate Committee on the Judiciary, 97th Congress, 1st Session. In that statement Dr. Maickel noted that typically vision impairment begins at .03–.08% blood alcohol and becomes significant in all subjects at .10%, reaction impairment begins at .04%, reaction-time impairment begins at .04%; judgment of distance dimensions and speed at .08%; coordination and memory at .10%.

## C.

The State also suggests the trial court erroneously entered judgment against Sering for driving across the center line. It claims the statute cited on the complaint, I.C. § 8–12–3–8(c), had been repealed prior to the date of Sering's alleged violation. We agree. However, Sering's action of crossing the center line was proscribed by Ind.Code Ann. § 9–4–1–63 (Burns 1980). The complaint and summons used in infractions, Ind.Code Ann. § 9–4–7–4(b) (Burns Supp.1985) do not require the citation of the particular statute allegedly violated. Rather, it is particular conduct which is the subject of the complaint. Thus, the incorrect citation of a repealed statute was superfluous in this instance. Sering's conduct was prohibited by I.C. § 9–4–1–63 and hence he was properly adjudged to have committed the infraction of driving across the center line.[14]

## D.

Finally, the State correctly notes the trial court did not enter a finding and a judgment on the charge of Public Intoxication, Ind.Code Ann. § 7.1–5–1–3 (Burns 1984). Thus, we remand that cause to the trial court for appropriate action.

In conclusion, this cause is remanded with instructions to vacate Sering's conviction and sentence for the BAC of .10% offense. However, the trial court's judgments on the offenses of operating a vehicle while intoxicated and driving while suspended, and on the infractions of speeding, driving across center line and improper plates are affirmed.

SULLIVAN, J., concurs.

BUCHANAN, C.J., dissents with separate opinion.

BUCHANAN, Chief Judge, dissenting.

I agree with the reasoning of the majority until the conclusion is reached that Sering's conviction under the BAC statute is an "included offense" within the coverage of Ind.Code 35–41–1–16 (1985) [hereinafter cited as the "included offense" statute].

We all agree that each of the crimes charged contains an element that distinguishes it from the other. Specifically, IC 9–11–2–1 (1985) [hereinafter cited as the BAC statute] requires proof of a specific blood alcohol level while IC 9–11–2–2 [hereinafter cited as the DWI statute] requires proof of intoxication, which must include a showing of impairment. Thus, the statutes do not violate the "identity of elements" test of *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. However, the majority then relies upon a portion of the included offense statute to conclude that the legislature did not intend for a defendant to be convicted and punished under both statutes for the same act. The included offense statute provides that:

" 'Included offense' means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) *differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.*"

(Emphasis supplied). The majority interprets subsection three of the included offense statute to mean that both the BAC statute and the DWI statute were designed to combat the same harm, the risk to life and property occasioned by the intoxicated driver. Because a driver may not be convicted under the DWI statute unless actual impairment is shown, the conclusion is then reached that the risk of harm resulting from an intoxicated motor vehicle operator is *greater* than the risk arising from an operator with a BAC level of .10 per cent. Therefore, operating a motor vehicle with a

---

**14.** The trial court did not impose any penalties for the offense of driving across the center line.

blood alcohol level of .10 per cent is a lesser included offense of DWI because the two statutes differ *only* in the degree of the risk of harm to the public.

Here, however, there is more than a mere difference in the level of harm embraced by the two statutes. They *contain different elements and require different proof* to sustain a conviction. Although generally directed to combat the harm of punishing motor vehicle operators who consume alcohol, the statutes were designed to punish different types of activity. So they differ in an additional way, other than the degree of risk of harm to the public interest, i.e. the degree of risk of harm to the public is not the *only* difference between. Therefore, violation of the BAC statute is not a lesser included offense of the DWI statute under IC 35–41–1–16(3).

I would affirm.