**Thomas E. WALKER, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

No. 49A04–9101–CR–00008.[1]

Court of Appeals of Indiana,
Third District.

Dec. 16, 1991.

---

**1.** This case was diverted to this office by order of the Chief Judge.

Ken A. Elmendorf, Elmendorf, Meyer, Freese & Walker, Brownsburg, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

Thomas E. Walker appeals his conviction for two counts of operating a vehicle while intoxicated resulting in death (DWI death), two counts of operating a vehicle with .10% blood alcohol content resulting in death (BAC death), one count of driving while intoxicated resulting in serious bodily injury (DWI injury) and one count of operating a vehicle with .10% blood alcohol content resulting in serious bodily injury (BAC injury). He raises three issues for our review:

I. Whether the trial court erred in admitting evidence of a blood alcohol test performed on a sample of Walker's blood.

II. Whether the trial court erred in denying Walker's motion for involuntary dismissal.

III. Whether the trial court erred in sentencing Walker on multiple counts for the same incident.

We affirm in part, reverse in part and remand.

At around 4:00 in the afternoon on August 25, 1989, Thomas Walker met a co-worker at the Palomino Club, an Indianapolis bar. He and the co-worker drank and talked until around 9:00 p.m., after which Walker called another co-worker and made plans to meet her at Tooley's, another local bar. Walker worked for Delight Wholesale, and was driving a company ice cream truck that night. En route to Tooley's, several witnesses traveling on Rockville Road noticed a white ice cream· truck exceeding the speed limit, driving erratically, and changing lanes without using turn signals. At one point, the truck was observed tailgating a white car, which applied its brakes. The ice cream truck screeched to a stop, and then caught up to the car, passed it, and began to swerve in and out of the car's lane. Finally, the truck maneuvered directly in front of the car, applied its brakes, and slid into the oncoming lane, hitting a car coming in the other direction head-on.

Two of the occupants of the car were killed and another was seriously injured. Walker was transported to Wishard Community Hospital where a blood alcohol content (BAC) test revealed he had a blood alcohol content of .21%. Following a jury trial, Walker was convicted on six felony counts arising from the incident and received a nineteen year sentence. He appeals.

## I.

### BAC Test

Walker first argues that the trial court erred by admitting into evidence the results of the BAC test from Wishard Hospital. He alleges that the State failed to show compliance with Indiana Code 9–11–4–6 (Supp.1990), which provides in relevant part:

(a) A physician or a person trained in obtaining bodily substance samples and acting under the direction of, or under a protocol prepared by, a physician, who:

(1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or

(2) performs a chemical test on blood, urine, or other bodily substance obtained from a person;

shall deliver the sample or disclose the results of the test to a law enforcement officer who requests it as a part of a criminal investigation. Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

Walker contends that there was no evidence that a law enforcement officer requested the blood test, that there was probable cause to believe that he had been drinking, that there was probable cause to place him under arrest, or that a physician had requested a blood draw. He also points to his testimony that he did not consent to the blood draw. Thus, he contends that the evidence of his BAC should not have been admitted.

█ It is not surprising that the record does not contain facts evidencing compliance with the statute—Walker did not object to the admission of the BAC test on that basis. Instead, he objected on the basis of hearsay and inadequate chain of custody of the blood sample. His failure to raise the statutory argument at trial constituted waiver of that issue for purposes of

his appeal. *Jethroe v. State* (1974), 262 Ind. 505, 319 N.E.2d 133, 137–138, *reh'g denied.* This is a classic case illustrating the reason for the waiver rule. Had Walker raised a timely objection based upon noncompliance with the statute, the State might have been able to provide evidence of the facts which Walker finds lacking.

█ Notwithstanding the waiver, Walker's reading of the statute is in error. The statute contains no requirement that a law enforcement officer request that a blood test be given, that a police officer have probable cause to place him under arrest, that a physician specifically request the blood draw, or that the patient consent to the blood draw in this situation. The statute merely provides that test results will be disclosed to authorities conducting a criminal investigation, even if the tests were taken for diagnostic purposes and those diagnostic purposes were a part of a protocol developed by a physician. That explicit consent is not required is obvious from subsection (h) of the statute, which provides:

(h) If the person from whom:

(1) the bodily substance sample is to be obtained under subsection (g) does not consent; and

(2) resists the taking of the sample; the law enforcement officer may use reasonable force to assist an individual (who must be authorized under this section to obtain a sample) in the taking of the sample.

Rather, consent is implied from the individual's choice to operate a vehicle on our highways. IC 9–11–4–1 (1988).[2]

The record reveals that it was customary in the Wishard Hospital emergency room to give BAC tests so any alcohol in the blood could be taken into consideration when administering medication. Moreover, the record reveals that it was customary for the police to request the results of blood tests of drivers who were in automobile accidents to determine if alcohol was involved. After the test, if it was determined that alcohol was involved in the acci-

---

**2.** Walker does not contend that he was not the    driver of the van.

dent, an arrest might be made. The probable cause affidavit states that Officer Thomas Fisher requested the result of the BAC test from Wishard Hospital, and was told that the result of the chemical test was .21% BAC.

Finally, this court has held that Indiana Code 9–11–4–6 does not create any rights in a criminal defendant, but rather limits the defendant's ability to invoke the physician-patient privilege. *State v. Robbins* (1990), Ind.App., 549 N.E.2d 1107, 1109–1110. Walker's reliance on the statute is misplaced.

■ Walker's contention that there was an insufficient chain of custody of the blood sample must also fail. He cites *Orr v. State* (1984), Ind.App., 472 N.E.2d 627, *transfer denied,* for the proposition that the State did not carry its burden of demonstrating a proper chain of custody. We agree that the facts in *Orr* are very similar to those in the present case; however, we note that in *Orr* the court found the chain of custody to be adequately demonstrated. Here, Walker testified that he went to the Wishard Hospital emergency room. An emergency room nurse testified that she took a blood sample from a Thomas Walker and sent it to the lab. A lab technician testified that she received blood samples in stoppered vacuum tubes labelled with Thomas Walker's name and that she tested them, concluding that the samples had a .21% BAC.

> The law does not require that the proponent account for 'every hand through which the sample passes.' *Fendley v. Ford* [ (1984), Ind.App., 458 N.E.2d 1167] at 1169. The chain of custody is established if the court may reasonably conclude from the evidence that the specimen passed through time and various hands in a relatively undisturbed fashion to the point where it is subjected to analysis. *Id.*

*Orr, supra,* 472 N.E.2d at 632. Walker's argument that the emergency room nurse did not identify him in court and that he testified that another nurse drew his blood

goes to the weight and not the admissibility of the evidence.

We conclude that the trial court did not err in admitting the results of the BAC test.

## II.

### Involuntary Dismissal

■ Walker next argues that the trial court erred in denying his motion for involuntary dismissal at the close of the State's case and at the close of evidence. He argues that the case should have been dismissed based upon the errors alleged in Issue I and the State's alleged noncompliance with Indiana Code 35–33–5–2. Indiana Code 35–33–5–2 provides, *inter alia,* that no warrant shall be issued for an arrest until an affidavit is filed with the judge describing the person and describing the offense allegedly committed. The record contains two signed probable cause affidavits, both written in longhand and in the nature of a standard form filled out by officers investigating an automobile accident. Record, pp. 7–9. Even if the affidavits were deficient (which they do not appear to be), a deficiency in a probable cause affidavit does not require dismissal. *Hicks v. State* (1989), Ind., 544 N.E.2d 500, 505. As to his restatement of the errors alleged in Issue I, we have already determined that they did not constitute reversible error. Therefore, the trial judge did not err in denying Walker's motion for involuntary dismissal.

## III.

### Sentencing on Multiple Counts

■ We agree with Walker's contention that the trial judge incorrectly sentenced him on six counts for the same accident. In *Kelly v. State* (1988), Ind. App., 527 N.E.2d 1148, *aff'd* 539 N.E.2d 25, the court held that an individual who drives while intoxicated resulting in multiple deaths or injuries commits only one offense, though with multiple results. The same result obtains with respect to BAC

offenses.[3] Thus, Walker may not be sentenced under the same statute on a different count for each person injured or killed. Stated otherwise, Walker may only be charged on one DWI or one BAC offense resulting from the same automobile accident.

■ More difficult is the question whether Walker may be charged with one DWI *and* one BAC offense as a result of the same set of circumstances. We hold that he may not.

■ Walker argues that the legislature did not intend double punishment for a single act and to impose double punishment would subject him to double jeopardy for one offense. We may respond to both contentions by an inquiry into the intent of the legislature. Courts have traditionally applied the test from *Blockburger v. U.S.* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 in the face of a double jeopardy challenge. The rule is essentially a rule of statutory construction; the relevant inquiry is to determine whether there is a clearly expressed legislative intent that cumulative punishment for the same act may be imposed. If the legislature so intended, imposition of cumulative punishment will not violate double jeopardy principles. *Missouri v. Hunter* (1983), 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535. The *Blockburger* test states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger, supra*, 284 U.S. at 304, 52 S.Ct. at 182. The assumption underlying the test is that the legislative body normally does not intend to punish the same offense under two different statutes. *Sering v. State* (1986), Ind.App., 488 N.E.2d 369, 374. We therefore look for a clear expression of legislative intent that cumulative punishment be visited on the offender. In the absence of such a clear expression, cumulative punishment violates double jeopardy principles. *Id.*

In *Sering*, the court concluded that operating a vehicle with a BAC of .10% was a lesser included offense of driving while intoxicated. Based partly upon that analysis, the court concluded that the legislature did not intend the imposition of cumulative punishment when the same act constituted a violation of both statutes. *Sering* was followed in *Rouse v. State* (1988), Ind.App., 525 N.E.2d 1278, *transfer denied*. In *Rouse*, however, the court concluded that BAC death was not a lesser included offense of DWI death. As Rouse had been convicted of BAC death as a lesser included offense, the court reversed his conviction for BAC death. The court did not address the cumulative punishment issue, as it did not arise in that case.

The *Rouse* court's holding that BAC death is not a lesser included offense of DWI death does not mandate a finding of a legislative intent to impose cumulative punishment for the two offenses. In fact, we hold otherwise. This court has previously held that a defendant may not be sentenced for both DWI death or BAC death and reckless homicide arising from the same accident. *See Marshall v. State* (1990), Ind.App., 563 N.E.2d 1341, *transfer denied* (BAC death); *Drossos v. State* (1982), Ind. App., 442 N.E.2d 1, *transfer denied* (DWI death); *Carter v. State* (1981), Ind.App., 424 N.E.2d 1047 (Staton, J. concurring) (DWI death). The result is the same when the offenses involved are DWI death and BAC death. We believe the legislature created two separate offenses to accommodate the proof problems facing the prosecutor in

---

**3.** A contrary result was reached in *Dupin v. State* (1988), Ind.App., 524 N.E.2d 329 (2–1, Sullivan, J. concurring in the result but not in the rationale). However, *Kelly*, in which Judge Sullivan concurred, was decided after *Dupin* and was later summarily affirmed by the Supreme Court. 539 N.E.2d 25. In the interim, *Spaulding v. State* (1989), Ind.App., 533 N.E.2d 597, *transfer denied* was decided, which followed *Kelly* and expressly declined to follow *Dupin*. It thus appears that Judge Sullivan's view has won the day and that *Dupin* has been overruled by *Kelly* to the extent that it allowed multiple convictions of violations of the same statute arising out of the same set of circumstances.

a case where an individual who has been drinking and driving causes the death of another person. In enacting the two statutes, the goal of the legislature was to ensure that the offender did not escape punishment, not to cause the offender to be punished twice. As there is no clearly articulated legislative intent which would permit cumulative sentencing under the circumstances, we hold that the trial court erred in sentencing Walker for multiple offenses arising out of the same incident.

In accordance with the foregoing, one conviction for each offense of BAC death and DWI death is vacated. The convictions for BAC injury and DWI injury are vacated as well. We remand for sentencing on either the remaining BAC death conviction or the remaining DWI death conviction. Thus, of the six offenses of which Walker was convicted, two stand and he may be sentenced on one.

Affirmed in part, reversed in part and remanded.

HOFFMAN, J., concurs.

CONOVER, J., concurs in result without opinion.