**Clint R. BELDON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 43A05–0805–CR–302.

Court of Appeals of Indiana.

May 21, 2009.

Rehearing Denied July 30, 2009.

David C. Kolbe, Warsaw, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy At-torney General, Indianapolis, IN, Attor-neys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Clint Beldon (Bel-don), appeals his conviction for operating a motor vehicle while intoxicated, as a Class D felony, Ind.Code § 9–30–5–3, and the trial court's finding that he is a habitual substance offender for sentencing pur-poses under I.C. § 35–50–2–10.

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

Beldon raises three issues for our re-view, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting a physician's videotaped deposition at trial in lieu of live testimony;

(2) Whether the State properly request-ed blood and urine test results pur-suant to I.C. § 9–30–6–6; and

(3) Whether the trial court erred in sen-tencing Beldon when it used the same prior conviction: (1) to elevate a Class A misdemeanor charge to a Class D felony; (2) to support a habitual substance offender finding; and (3) as an aggravating factor to support the imposition of a maxi-mum sentence.

### FACTS AND PROCEDURAL HISTORY

On the afternoon of April 24, 2007, Vic-tor Staton (Staton) and his wife were driv-ing their vehicle on County Road 1350 in Kosciusko County, Indiana. As they ap-proached the intersection of County Road 1350 North and County Road 700 West, Staton noticed Beldon's vehicle approach-

ing a stop sign. Staton slowed his vehicle down to make sure that Beldon would stop. Staton saw Beldon slow down and look to his right. Believing that Beldon would look left and come to a complete stop after seeing Staton's vehicle approaching, Staton put his foot back on the accelerator and sped up. However, Beldon never looked to his left. Instead, Beldon rolled through the stop sign and pulled his vehicle out into the intersection. Both Staton and Beldon tried to avoid impact, but a collision nevertheless occurred.

Minutes later, Sergeant Terry Chanley (Sergeant Chanley) and Officer Matthew Tice (Officer Tice) of the Nappanee Police Department arrived at the scene of the collision. Sergeant Chanley and Officer Tice approached Beldon's vehicle and saw Beldon slumped over across the passenger seat with his head against the passenger side door. When Sergeant Chanley and Officer Tice asked Beldon if he was okay, Beldon was unresponsive. Sergeant Chanley and Officer Tice detected the smell of alcohol coming from Beldon's vehicle.

Shortly thereafter, an ambulance arrived at the scene of the accident. Paramedics removed Beldon from his vehicle and transported him to the Elkhart General Hospital. While the ambulance was en route to the hospital, Beldon became semi-conscious and combative with paramedics. Paramedic Monte Flowers (Paramedic Flowers) wrote in his report that Beldon appeared to be intoxicated.

After arriving at the hospital, Beldon was placed in a trauma room. Dr. Michelle Bache (Dr. Bache), an emergency room physician, treated Beldon upon his arrival. During the course of her treatment, and absent any request by law enforcement to do so, Dr. Bache ordered that samples of Beldon's blood and urine be collected and tested. Linda Rothenbuhler (Rothenbuhler), a phlebotomist, took a blood sample from Beldon. William Scott Sullivan (Sullivan), an emergency room technician, took a urine sample from Beldon. Following the chain of custody, Rothenbuhler and Sullivan delivered the samples to Yashanait Chore die (Choredie), a medical laboratory technician. Choredie, in turn, passed the samples to Elizabeth Rowell (Rowell), a support technician, for testing. The test results revealed that Beldon's blood alcohol content was 0.27.

On August 3, 2007, the State filed an Information charging Beldon with: Count I, operating a motor vehicle with at least 0.08 hundredths gram of alcohol but less than 0.15 hundredths grams of alcohol per 100 milliliters of blood or 210 milliliters of breath, a Class C misdemeanor, I.C. § 9–30–5–1; Count II, operating a motor vehicle while intoxicated in a manner that endangers a person, a Class A misdemeanor, I.C. § 9–30–5–2; Count III, operating a motor vehicle while intoxicated, a Class C misdemeanor, I.C. § 9–30–5–2; and Count IV, operating a motor vehicle with an alcohol concentration equivalent to at least fifteen-hundredths grams of alcohol per one hundred millimeters of his blood, a Class A misdemeanor, I.C. § 9–30–5–1. The State also filed four elevated charges based on Beldon's prior conviction for operating a vehicle while intoxicated, Counts IA, IIA, IIIA, and IVA. On March 11 through 12, 2008, the trial court conducted a trifurcated jury trial. During the first phase of the trial, the State presented several witnesses, including Sergeant Chanley, Officer Tice, Paramedic Flowers, Rothenbuhler, Choredie, and Rowell. Dr. Bache was unavailable to testify at trial because of her "extensive patient responsibilities and work schedule." (Appellant's Appendix p. 21). Over Beldon's objection,

the trial court allowed the State to present Dr. Bache's video deposition into evidence for the jury to watch. At the conclusion of the evidence, the trial court found Beldon guilty of Counts I, II, III and IV.

During the second phase of the trial, the State presented evidence that Beldon had a previous conviction for operating a motor vehicle while intoxicated, a Class D felony, in November 10, 2003. The jury found that Beldon had a previous conviction for purposes of the elevated charges, and found Beldon guilty of Counts IA, IIA, IIIA and IVA.

During the third phase of the trifurcated trial, the State argued that Beldon had two prior substance offense convictions, and was therefore eligible to be sentenced under the habitual substance offender statute. The State relied upon Beldon's conviction for operating a vehicle while intoxicated, a Class D felony, from February 1992, and his conviction for operating a motor vehicle while intoxicated, a Class D felony, from November 10, 2003. The jury found that Beldon was a habitual substance offender.

On April 10, 2008, the trial court merged Counts I, II, III, IV and Counts IA, IIA, IIIA, IVA for purposes of sentencing, and entered a single conviction for Count IIA, operating a motor vehicle while intoxicated in a manner that endangers a person with a prior conviction, a Class D felony, I.C. § 9-30-5-3. The trial court applied Beldon's criminal history, including four previous convictions for operating a vehicle while intoxicated, a conviction for child molesting, and a conviction for possession of a handgun by a convicted felon, as an aggravating factor to support a three-year sentence, the maximum sentence available for operating a vehicle while intoxicated, as a Class D felony. Additionally, the trial court enhanced Beldon's sentence by six

years for being a habitual substance offender.

Beldon now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Admission of Video–Taped Deposition

Beldon argues that the trial court abused its discretion when it permitted the State to present Dr. Bache's videotaped deposition in lieu of live testimony. Specifically, Beldon argues that Dr. Bache's deposition was hearsay, and thus, its admission violated his fundamental rights to confront witnesses under both the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Payne v. State*, 854 N.E.2d 7, 13 (Ind.Ct.App.2006), *trans. denied.* An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* If a trial court abuses its discretion by admitting the challenged evidence, we will only reverse for that error if "the error is inconsistent with substantial justice" or if "a substantial right of the party is affected." *Id.* (quoting *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind.Ct.App.2004)). Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Id.*

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evid. R. 801(c). Generally, an absent witness' deposition testimony offered in court to prove the truth of the matter asserted constitutes

classic hearsay. *Garner v. State,* 777 N.E.2d 721, 724 (Ind.2002). However, possible exceptions to the hearsay rule exist under both Indiana Trial Rule 32 and Indiana Evidence Rule 804. *Id.* These rules allow the use of prior recorded testimony in lieu of live testimony when special circumstances exist. *Id.* The decision to invoke the rule allowing admission of a deposition is within the sound discretion of the trial court. *Id.* Nevertheless, the constitutional right of confrontation restricts the range of admissible hearsay by requiring (1) that the State either produce the declarant or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant and (2) that the statements bear sufficient indicia of reliability. *Id.* (quoting *Jackson v. State,* 735 N.E.2d 1146, 1150 (Ind.2000)). Depositions that comport with the principal purposes of cross-examination provide sufficient indicia of reliability. *Id.*

Beldon and his attorney both attended the deposition of Dr. Bache. During the depositions, Beldon's attorney extensively questioned Dr. Bache regarding her treatment of Beldon. Consequently, there was ample opportunity for Beldon to challenge Dr. Bache's truthfulness and memory during the deposition. We conclude that Dr. Bache's videotaped deposition demonstrated sufficient indicia of reliability.

Nevertheless, the Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy a right ... to be confronted with the witnesses against him." This right applies to both federal and state prosecutions. *Crawford v. Washington,* 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004). The Confrontation Clause requires that testimonial statements of witnesses absent from a criminal trial shall only be admitted where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Id.* at 54–55, 124 S.Ct. at 1365. A witness is unavailable for purposes of the Confrontation Clause requirement if the State has made a good faith effort to obtain the witness's presence at trial. *Tiller v. State,* 896 N.E.2d 537, 543 (Ind.Ct.App.2008), (citing *Garner,* 777 N.E.2d at 724) *reh'g denied.* The State is correct when it notes that Trial Rule 32 permits use of an absent witness' deposition testimony if the court finds that "upon application and notice, such that exceptional circumstances exist to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." T.R. 32(A)(3)(e). However, our supreme court has noted that Trial Rule 32 is not applicable to claims involving a violation of the defendant's Sixth Amendment right of confrontation. *Garner,* 777 N.E.2d at 724. As such, Trial Rule 32 plays no part in our analysis of the instant case. The issue here is not whether "exceptional circumstances" existed so as to justify admitting Dr. Bache's deposition into evidence at trial, but rather, the issue is whether the State made a good faith effort to obtain Dr. Bache's attendance at trial. "Even if there is only a remote possibility that an affirmative measure might produce the witness at trial, the good faith obligation may demand effectuation. Reasonableness is the test that limits the extent of alternatives the State must exhaust." *Id.* at 725 (citing *Gillie v. State,* 512 N.E.2d 145, 150 (Ind.1987)).

The record does not reflect that the State made a good faith effort to obtain Dr. Bache's attendance at trial. Granted, after Dr. Bache filed an affidavit stating that she would not be available to testify on the day of trial because of her work

schedule, the State took steps to preserve her testimony through a videotaped deposition. However, a busy work schedule is not sufficient to circumvent the constitutional right to confrontation. The State could have asked Dr. Bache to rearrange her work schedule, or ask another doctor to manage her patient responsibilities for the short duration of the trial. Likewise, the record indicates that the State failed to make any effort to attempt to secure Dr. Bache's attendance at trial by subpoena. Here, such alternatives presented more than a "remote possibility" that Dr. Bache could have testified in person. As such, we conclude that the State did not make a good faith effort to obtain Dr. Bache's attendance at trial. Furthermore, the trial court's determination that Dr. Bache was unavailable to testify was clearly against the logic and effect of the facts and circumstances before the court. For these reasons, we conclude that the trial court erred when it determined that Dr. Bache was unavailable to testify and that it abused its discretion when it admitted Dr. Bache's videotaped deposition in lieu of live testimony.

■ Nonetheless, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error, if "the error is inconsistent with substantial justice" or if "a substantial right of the party is affected." *Payne*, 854 N.E.2d at 13. Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Id.*

Here, copies of Beldon's medical records and ambulance run report were admitted into evidence. Likewise, appropriate chain of custody forms and descriptions of the medical procedures used in testing Beldon's blood and urine were also admitted.

The State also presented the testimony of Paramedic Flowers, who testified as to Beldon's physical condition following the car accident. Additionally, the State presented the testimony of those individuals directly involved in the testing of Beldon's blood and urine, including the phlebotomist who drew his blood, the emergency room technician who drew his urine, and the laboratory technicians who handled the samples in the laboratory. The State also presented the testimony of Dr. Prentiss Jones, a certified toxicologist, who used Beldon's test results to calculate his blood alcohol content. We conclude that Dr. Bache's videotaped deposition was merely cumulative of this other evidence. As such, we hold that although the trial court erred by admitting the videotaped deposition of Dr. Bache, the error was harmless beyond a reasonable doubt.

## II. *State's Request for Blood and Urine Test Results*

■ Beldon also argues that the State did not present sufficient evidence that his blood and urine test results were requested from the hospital pursuant to Indiana Code § 9–30–6–6. He seems to contend that this alleged defect should have rendered his blood and urine samples inadmissible at his trial. However, Beldon did not make any objection to the admission of the medical records based on Indiana Code section 9–30–6–6 during the trial. As such, Beldon has waived this argument for purposes of appeal. *See Walker v. State*, 582 N.E.2d 877, 879 (Ind.Ct.App.1991) (citing *Jethroe v. State*, 262 Ind. 505, 319 N.E.2d 133, 137–38 (1974)).

■ Waiver notwithstanding, Beldon's argument fails. Indiana Code § 9–30–6–6 provides: "A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician who ... performs a chemical test on blood, urine,

or other bodily substance obtained from a person; shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as a part of a criminal investigation." This statute "applies when a sample has already been obtained. It allows a police officer to obtain the sample or the results from the analysis of a sample that has already been collected when the results are needed as part of a criminal investigation." *State v. Eichhorst,* 879 N.E.2d 1144, 1148 (Ind.Ct.App.2008), *trans. denied.*

In *Eichhorst,* we examined an argument by the Appellant that Indiana Code section 9–30–6–6 cannot circumvent the protections of records under HIPPA. *Id.* at 1150–1154. We explained how the procedures undertaken by the law enforcement officers and their authority under Indiana Code section 9–30–6–6 rendered the medical records admissible in that case, in spite of the protections under HIPPA.

Beldon has not made the effort to develop such an argument, but rather oversimplifies his contention by arguing that Indiana Code section 9–30–6–6 mandates certain procedural steps. He then states "the only evidence before the jury was that Officer Curtis had some recollection that the prosecutor's office subpoenaed the results. He did not request them himself and there was no evidence presented at trial that subpoenas were procured." (Appellant's Br. p. 10). However, in Indiana Code section 9–30–6–6, we find no requirement of subpoena or any requirement that if a subpoena is used to request the medical records the subpoena be admitted along with the medical records. Further, Indiana Code section 9–30–6–6 merely requires a "law enforcement officer" to request the medical records, and Beldon has made no contention that an employee of a prosecutor's office is not a "law enforcement officer" for purposes of that statute. Indeed, in *Eichhorst,* the records "were provided to the prosecutor pursuant to a subpoena." 879 N.E.2d at 1151.

Altogether, had Beldon raised a timely objection based upon noncompliance with the statute, the State may have been able to provide evidence that Beldon complains is lacking. But he did not; so, he has waived his contention of error. Be that as it may, Beldon has failed to direct us to any specific requirement mandated by Indiana Code section 9–30–6–6 that, if not met, would render the medical records inadmissible, and, therefore, his contention must fail.

### III. *Enhancement of Beldon's Sentence*

Beldon argues that the trial court improperly used the same prior conviction against him in three different ways: (1) to elevate his operating while intoxicated charge from a misdemeanor to a Class D felony; (2) as a predicate conviction supporting the habitual substance offender finding; and (3) as an aggravating factor to support the imposition of the maximum sentence.

Beldon's conviction for operating a vehicle while intoxicated in a manner that endangers a person was a Class D felony, instead of a Class A misdemeanor, based upon his prior conviction for operating a vehicle while intoxicated that he received on November 10, 2003. (Appellant's App. p. 447). Additionally, Beldon was found to be a habitual substance offender pursuant to Indiana Code section 35–50–2–10 based in part on that same prior conviction. (Appellant's App. p. 448). In addition, the trial court considered Beldon's criminal history as an aggravating factor which supported the imposition of the maximum sentence for his conviction. Included in his criminal history, of course, was his conviction from November 10, 2003.

In *Pedraza v. State,* 887 N.E.2d 77, 80–81 (Ind.2008) our supreme court held that, under our current advisory sentencing scheme, the use of a prior conviction to support a habitual substance offender finding or to elevate a criminal charge does not preclude the trial court from considering that same conviction as an aggravating factor. As such the trial court did not abuse its discretion by considering Beldon's criminal history, which included his conviction on November 10, 2003, as an aggravating factor.

However, in *Mills v. State,* 868 N.E.2d 446, 452 (Ind.2007), our supreme court expressly stated that it was improper for a trial court to elevate a criminal charge based upon a prior conviction, and then enhance the sentence for that same charge by way of a habitual offender finding based upon the same prior conviction. By using Beldon's prior conviction to support his conviction as a Class D felony and to enhance the sentence based on a habitual substance offender finding, we conclude that the trial court made such an improper double enhancement.

In *Sweatt v. State,* 887 N.E.2d 81 (Ind. 2008), a double enhancement case decided the same day as *Pedraza,* our supreme court provided guidance as to what remedy should be imposed on appeal when we conclude there has been an improper double enhancement. Specifically, our supreme court remanded to the trial court to use its discretion to remedy the sentencing defect. *Id.* at 85. Here, Beldon's sentence could be fixed by entering a conviction for operating a vehicle while intoxicated as a Class A misdemeanor (which would not rely upon a prior conviction), and then adjusting the habitual substance offender enhancement of his sentence downward in accordance with Indiana Code section 35–50–2–10, or by entering his conviction as a Class D felony but removing the habitual substance offender enhancement altogether. Therefore, we will remand so that the trial court can use its discretion to remedy the sentencing defect.

## CONCLUSION

Based on the foregoing, we conclude that although the trial court erred by admitting the videotaped deposition of Dr. Bache, the deposition testimony was merely cumulative of other properly admitted evidence, and the error was harmless beyond a reasonable doubt. We also conclude that Beldon's failure to raise any argument at trial concerning the State's failure to provide evidence of requests for blood and urine tests constituted waiver of that issue for purposes of his appeal. Finally, we conclude that the trial court erred by elevating his charge for operating a vehicle while intoxicated to a Class D felony based upon a prior conviction and enhancing his sentence based, in part, upon a habitual substance offender finding relying upon the same prior conviction. Therefore, we remand so that the trial court may remedy the sentencing defect in accordance with this opinion.

Affirmed in part, reversed in part, and remanded with instructions.

DARDEN, J., and VAIDIK, J., concur.