# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**EVAN B. BRODERICK**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Aug 09 2012, 9:15 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GUYDELL WATSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1107-CR-443 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48D04-1009-FD-331

**August 9, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Senior Judge**

Guydell Watson appeals his conviction for operating a vehicle with a blood-alcohol content ("BAC") of at least .08 percent but less than .15 percent, a class C misdemeanor.[1]

We affirm.

## ISSUES

1.    Whether the trial court abused its discretion in instructing the jury.

2.    Whether the trial court abused its discretion in refusing to appoint an expert at public expense.

3.    Whether the trial court improperly granted the State's motion in limine.

## FACTS

At approximately 4:40 p.m. on September 18, 2010, Officer Eric Holtzleiter of the Anderson Police Department was parked in his marked police vehicle when he observed Watson driving his vehicle west on East 32nd Street, which had a posted speed limit of thirty-five miles per hour.  Using his radar gun, Officer Holtzleiter clocked Watson's speed at fifty-one miles per hour.  Once Watson passed, Officer Holtzleiter activated his emergency lights and sirens and initiated a traffic stop.

As Officer Holtzleiter approached the driver's side window, he "immediately noticed a clear bottle in between [Watson]'s legs." (Tr. 122).  The bottle was "[w]ell less

---

[1]  Ind. Code § 9-30-5-1.

than half" full and labeled "Demitri Premium London Gin." (Tr. 125). Officer Holtzleiter ordered Watson to give him the bottle and the car keys. As Watson did so, Officer Holtzleiter observed that Watson's movements were "a little slow and a little unsteady." (Tr. 127). Officer Holtzleiter also "detected a strong odor of an alcoholic-type beverage coming from his person." (Tr. 127).

Officer Holtzleiter ordered Watson to exit the vehicle. Watson complied but had "difficulty getting the handle [and] opening the door[.]" (Tr. 128). As he exited the vehicle, Watson "was kind of unsteady" and had to lean against the vehicle "for balance." (Tr. 128). Officer Holtzleiter then administered several field sobriety tests, which Watson failed.

Officer Holtzleiter placed Watson under arrest and transported him to the Anderson Police Department, where Officer Holtzleiter administered a breath test with a B.A.C. Datamaster ("Datamaster"). The breath test revealed a blood-alcohol content of .15 percent.

On or about September 20, 2010, the State charged Watson with Count 1, operating a vehicle with a BAC of at least .15 percent, a class A misdemeanor; and Count 2, operating a vehicle with a BAC of at least .15 percent with a previous conviction for operating while intoxicated, a class D felony. A jury trial, commenced on March 23, 2011, resulted in a hung jury. Subsequently, the State again charged Watson with Count 1, operating a vehicle with a BAC of at least .15 percent, a class A misdemeanor; and

3

Count 2, operating a vehicle with a BAC of at least .15 percent with a previous conviction for operating while intoxicated, a class D felony.

On April 8, 2011, Watson filed a motion for public funds with which to hire an expert witness and requested an ex parte hearing. The trial court held an open hearing on the motion on April 12, 2011. Finding "no factual basis" for, and "no real clarification made as to the request," the trial court denied the motion. (Hr'g Tr. 9).

The trial court commenced a second jury trial on June 8, 2011. During the trial, Robert Nolley, an inspector with the Indiana State Department of Toxicology, testified that one of his duties is to "inspect and repair breath test instrumentation" such as Datamasters. (Tr. 75-76). Nolley testified that Datamasters are inspected and calibrated every three months. He further testified that the Datamasters are calibrated to "read out less" than the actual BAC to "give the benefit of the doubt to [a] defendant." (Tr. 87). Nolley testified that as a result, a test "using a .15 solution," (tr. 87), from a known sample would give a result "somewhere no lower than .14 nor higher than .149" percent BAC. (Tr. 88). Thus, if someone has an actual BAC of .15 percent, "they should test somewhere between .140 and .149" percent. (Tr. 88). On cross-examination, Nolley agreed that if a Datamaster is "out of calibration," a person with an actual BAC of .149 could test at .15 percent. (Tr. 100).

Over Watson's objection, the trial court also instructed the jury on operating a vehicle with a BAC of at least .08 percent but less than .15 percent as a lesser-included

4

offense of operating a vehicle with a BAC of at least .15 percent. Specifically, the trial court instructed as follows:

> Operating a Vehicle with an Alcohol Concentration Equivalent of .08, a Class C Misdemeanor, is included in Count I, Operating a Vehicle With an Alcohol Concentration Equivalent of .15 or More, Class A Misdemeanor. If the State proves the defendant guilty of Operating a Vehicle With an Alcohol Concentration Equivalent of .15 or More, Class A Misdemeanor, you need not consider the included crime. However, if the State fails to prove the defendant committed Operating a Vehicle With an Alcohol Concentration Equivalent of .15 or More, Class A Misdemeanor, you may consider whether the defendant committed Operating a Vehicle with an Alcohol Concentration Equivalent of .08, Class C Misdemeanor, which the Court will define for you. . . . The crime Operating a Vehicle with an Alcohol Concentration Equivalent of .08, a Class C Misdemeanor, is included in the charged crime of Operating a Vehicle with an Alcohol Concentration Equivalent of .15 or More, Class A misdemeanor. A person who operates a vehicle with an alcohol concentration equivalent to at least eight hundredths gram of alcohol, but less than fifteen hundredths gram of alcohol per two hundred and ten liters of the persons [sic] breath commits a Class C Misdemeanor. Before you may convict the defendant of Operating a Vehicle with an Alcohol Concentration Equivalent of .08, a Class C Misdemeanor, the State must have proved each of the following beyond a reasonable doubt. One, the defendant, two, operated a vehicle, three, with an alcohol concentration equivalent to at least eight hundredths gram of alcohol per two hundred and ten liters of his breath. If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty of Operating a Vehicle with an Alcohol Concentration Equivalent of .08, Class C Misdemeanor.

(Tr. 292-94).

As to Count 1, the jury found Watson guilty of operating a vehicle with a BAC of at least .08 percent but less than .15 percent, a class C misdemeanor, as a lesser-included offense. The State then made a motion to amend the charging information for Count 2 to operating a vehicle with a BAC of at least .08 percent with a previous conviction for

5

operating while intoxicated, a class D felony. The trial court granted the motion, and Watson pleaded guilty to Count 2.

The trial court held a sentencing hearing on June 30, 2011. For purposes of sentencing, the trial court merged Count 1 with Count 2 and sentenced Watson to 1095 days in the Department of Correction, with 715 days to be executed.

Additional facts will be provided as necessary.

DECISION

1. Jury Instructions

Watson asserts that the trial court abused its discretion in instructing the jury.[2]

> "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." "Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion." "In reviewing a trial court's decision to give or refuse tendered jury instructions," this Court "considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given."

---

[2] Watson argues that the "trial court erred by allowing the [S]tate to add a lesser-included offense." Watson's Br. at 7. Given Watson's argument and citation to authority, his argument is better presented as whether the trial court abused its discretion in instructing the jury. We note, however, that Watson has failed to include in his brief and Appendix the jury instruction at issue. "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Ind. Appellate Rule 46(A)(8)(e). An appellant waives the issue by failing to comply with this appellate rule. *Davis v. State,* 892 N.E.2d 156, 163 (Ind. Ct. App. 2008). Waiver notwithstanding, we shall address this issue.

*Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005) (internal citations omitted), *trans. denied*.

Here, Watson argues that the trial court improperly granted the State's request for an instruction on operating a vehicle with a BAC of at least .08 percent but less than .15 percent as a lesser-included offense of operating a vehicle with a BAC of at least .15 percent.

> When a party asks a trial court to instruct the jury on an alleged lesser-included offense of the crime charged, the court must conduct a three-part analysis to determine whether the instruction is appropriate. In the first step, the court must compare the statute defining the crime charged and the statute defining the alleged lesser-included offense. If the alleged lesser-included offense may be established by proof of all of the same or proof of less than all of the same material elements to the crime, or if the only difference between the two statutes is that the alleged lesser-included offense requires proof of a lesser culpability, then the alleged lesser-included offense is inherently included in the crime charged.
>
> In the second step, if the trial court determines that the alleged lesser-included offense is not inherently included in the charged crime, it must compare the statute defining the alleged lesser-included offense with the charging instrument in the case. If all of the elements of the alleged lesser-included offense are covered by the allegations in the charging instrument, then the alleged lesser-included offense is factually included in the charged crime.
>
> If the trial court has determined that the alleged lesser-included offense is either inherently or factually included in the charged crime, then it must proceed to the third step. In the third step, the trial court must examine the evidence presented by each party and determine whether there is a serious evidentiary dispute over the element or elements that distinguish the crime charged and the lesser-included offense. If it would be possible for a jury to find that the lesser, but not the greater, offense had been committed, then the trial court must instruct the jury on both offenses.

7

*Watts v. State*, 885 N.E.2d 1228, 1231-32 (Ind. 2008) (internal citations omitted).

Indiana Code section 9-30-5-1 provides, in relevant part, as follows;

> (a) A person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per:
> (1) one hundred (100) milliliters of the person's blood; or
> (2) two hundred ten (210) liters of the person's breath;
> commits a Class C misdemeanor.
> (b) A person who operates a vehicle with an alcohol concentration equivalent to at least fifteen-hundredths (0.15) gram of alcohol per:
> (1) one hundred (100) milliliters of the person's blood; or
> (2) two hundred ten (210) liters of the person's breath;
> commits a Class A misdemeanor.

The State originally charged that Watson, on or about September 18, 2010, "did knowingly operate a vehicle with an alcohol concentration equivalent to at least fifteen-hundredths (0.15) gram of alcohol per 210 liters of said defendant's breath, to-wit: fifteen hundredths (0.15) gram of alcohol per two hundred ten (210) liters of the person's breath." (App. 1).

In *Sering v. State*, 488 N.E.2d 369 (Ind. Ct. App. 1986), Sering appealed his convictions for operating a vehicle with a BAC of .10 percent and operating a vehicle while intoxicated. At that time, the former offense was a class C misdemeanor and the latter offense was a class A misdemeanor.

In determining whether the former was a lesser-included offense of the latter, the *Sering* court reiterated that an offense is a lesser included offense "if it differs from another 'only in the respect that a less serious . . . risk of harm . . . to the public interest . . . is required to establish its commission.'" *Sering*, 488 N.E.2d at 375 (quoting Indiana

8

Code section 35-41-1-16(3)).  There, the court determined that the risk of harm, namely, "the cost in lives and property occasioned by the intoxicated driver," to the public interest in the operation of a vehicle while intoxicated is the "same risk implicit in the BAC of .10% offense."  *Id*.  The *Sering* court's analysis continued:

> Having found identity of harm or risk of harm in the two subject alcohol related driving offenses, we must determine whether one risk is greater than the other.  We conclude the legislature has determined the risk occasioned by the intoxicated operator is greater than the risk occasioned by the BAC of .10% operator.  <u>This legislative intent is evidenced by the disparate classification of the two offenses; operating while intoxicated is a class A misdemeanor while operating with a BAC of .10% is a class C misdemeanor</u>. . . .
>
> We conclude, therefore, that operating a vehicle with BAC of .10% is a lesser included offense of operating a vehicle while intoxicated because the former offense differs from the latter offense in that a less serious risk of harm to the public interest is required to establish its commission.

*Id*. at 376 (original footnotes omitted) (emphasis added).

The harm or risk of harm is the same threat to the public whether occasioned by a driver operating a vehicle with a BAC of at least .08 percent but less than .15 percent or a driver operating a vehicle with a BAC of at least .15 percent.  Operating a vehicle with a BAC of at least .08 percent but less than .15 percent, however, is a class C misdemeanor while operating a vehicle with a BAC of at least .15 percent is a class A misdemeanor.  Given the disparate classification of the two alcohol-related offenses, it is evident that the legislature intended the former to be a lesser-included offense of the latter.  *See id*.

Accordingly, we find that operating a vehicle with a BAC of at least .08 percent but less than .15 percent is an inherently lesser-included offense of operating a vehicle

9

with a BAC of at least .15 percent.  We therefore find no abuse of discretion in instructing the jury on operating a vehicle while intoxicated as a class C misdemeanor.[3]

2. Appointment of Expert

Watson next asserts that the trial court improperly denied his request for expert witness funds, where he sought to hire an expert to decipher the results of tests performed on the Datamaster used by Officer Holtzleiter.

> Decisions regarding experts for indigent defendants are committed to the trial court's sound discretion, and such decisions will not be overturned absent an abuse of that discretion.  The trial court is not required to appoint any expert that the defendant believes may be helpful, and the defendant bears the burden of demonstrating the need for the appointment, specifying precisely how he or she would benefit from the requested services.
>
> While there is no exhaustive and precise list of considerations, the trial court's central inquiry addresses whether the services are necessary to assure an adequate defense and whether the defendant specifies precisely how he would benefit from the requested expert services.  Factors include: (1) whether the services would bear on an issue generally regarded to be within the common experience of the average person, or on one for which an expert opinion would be necessary; (2) whether the requested expert services could nonetheless be performed by counsel; (3) whether the proposed expert could demonstrate that which the defendant desires from the expert; (4) whether the purpose for the expert appears to be only exploratory; (5) whether the expert services will go toward answering a substantial question in the case or simply an ancillary one; (6) the seriousness of the charge; (7) whether the State is relying upon an expert and expending substantial resources on the case; (8) whether a defendant with monetary resources would choose to hire such an expert; (9) the costs of the expert services; (10) the timeliness of the request for the expert and whether it was made in good faith; and (11) whether there is cumulative evidence of the defendant's guilt.  Even where there are factors present

---

[3] Watson does not argue that the trial court abused its discretion in determining that there is a serious evidentiary dispute over the element or elements that distinguish the crime charged and the lesser-included offense.  We therefore shall not address the third step of the inquiry necessary when determining whether a trial court has properly instructed the jury on lesser-included offenses.

10

militating toward appointment of an expert, such as the services would have borne upon an issue outside the common experience of the average person, and analysis is outside the scope of the typical attorney's services, the factors may be insufficient to <u>require</u> the trial court to approve the hiring of an expert at public expense.

*Kocielko v. State*, 938 N.E.2d 243, 254-55 (Ind. Ct. App. 2010) (internal citations omitted), *on reh'g,* 943 N.E.2d 1282 (Ind. Ct. App. 2011), *trans*. *denied*.

On April 12, 2011, the trial court held a hearing on Watson's motion for public funds with which to hire an expert witness. During the hearing, Watson's counsel asserted that he sought funds for an expert witness "to find out if the maintenance reports" on the Datamaster used on September 18, 2010, "are correct."[4] (Hr'g Tr. 8). He also sought "other general information about the accuracy of the" Datamaster. (Hr'g Tr. 8). Finding "no factual basis demonstrated for the necessity for expert witness funds . . . , and no real clarification made as to the request itself as to what's being sought and why the expert is needed," the trial court denied Watson's motion. (Hr'g Tr. 9).

Here, Watson failed to show that the proposed unnamed expert could demonstrate that which he desired from the expert, and in fact, failed to set forth that which he desired

---

[4] In his brief, Watson asserts that the maintenance reports in question were

> admitted in the court's record of exhibits in a hearing on the State's Motion in Limine and for the limited purpose thereof . . . on June 8, <u>2010</u>. Realizing that they did not have the requisite expertise to decipher these test results, trial counsel requested funds from the court to hire an expert witness to examine the disputed test results and report those findings to counsel and if needed to testify at trial.

Watson's Br. at 14 (emphasis added). The trial court held the hearing on the State's motion in limine on June 8, <u>2011</u>, subsequent to Watson's request for state funds with which to hire an expert witness and the trial court's hearing thereon. It was during the June 8, 2011 hearing that the trial court, for the limited purpose of the hearing on the State's motion in limine, admitted the three maintenance reports into evidence.

with any specificity, only arguing that he sought "general" information. (Hr'g Tr. 8). Thus, it appeared that the purpose for the expert was only exploratory. Watson also failed to set forth the costs of an expert and whether the State would be expending substantial resources on the case. Moreover, Watson does not demonstrate that he faced particularly serious charges. Finally, Watson had the opportunity to, and in fact did, extensively cross-examine Nolley regarding the functioning, testing, and calibrating of the Datamaster.

Watson failed to meet his burden of demonstrating a need for the appointment of an expert. We therefore find no abuse of discretion in denying Watson public funds with which to hire an expert witness.

## 3. Motion in Limine

Watson asserts that the trial court improperly granted the State's motion in limine, which sought to exclude any evidence regarding the Datamaster's repair history. Watson argues that "[a]s far as evidence of guilt, . . . there were the error reports of the Datamaster that seemed ripe for review by an independent expert witness." Watson's Br. at 20.

> A motion in limine is not a final ruling on the admissibility of evidence, and a ruling on the motion does not preserve the error for appeal. Our supreme court has held that an objection must be specific in order for the issue to be preserved for appellate review.

*Simmons v. State*, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002) (internal citations omitted); *Hollowell v. State*, 753 N.E.2d 612, 615 (Ind. 2001) ("In order to preserve an

error for appellate review, a party must do more than challenge the ruling on a motion in limine"). "It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony." *Barnett v. State*, 916 N.E.2d 280, 287 (Ind. Ct. App. 2009), *trans. denied*.

In this case, Watson fails to argue, or cite to that portion of the transcript reflecting such an argument, if any, that he requested relief during the trial from the trial court's prior ruling on the motion in limine or otherwise sought to present any evidence regarding the Datamaster's repair or test records. Watson therefore has waived his arguments regarding the trial court's granting of the State's motion in limine and exclusion of evidence. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*. *See also Hollowell*, 753 N.E.2d at 615-16 (recognizing that "[a]bsent . . . a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error").

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.