**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**NICOLE A. ZELIN**
Greenfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD WARREN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1301-CR-16 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1203-FB-399

**November 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Donald Warren ("Warren") was convicted of Burglary[1] and Conspiracy to Commit Burglary,[2] each as a Class B felony. He now appeals.

We affirm.

**Issues**

Warren presents two issues for our review:

I.   Whether the trial court abused its discretion when, upon the State's objection to a line of questioning, it limited the scope of Warren's cross-examination of a law enforcement officer about Warren's statements to police; and

II.  Whether there was sufficient evidence to sustain his convictions.

**Facts and Procedural History**

Sometime in November 2011, Warren met Nicholas Tate ("Tate") and Michael Williams ("Williams") at Williams's home in Indianapolis. Warren and Tate were friends and consumed narcotics together. Tate had stolen electronics from Williams, and Williams in turn had coerced Tate into helping him perform burglaries. Among the possible targets for burglaries was the home of Gregory Peek ("Peek"), in New Palestine; Tate's father was friends with Peek, who owned a construction business and had traded guns with Tate's father. Tate said Peek's home would likely have guns, money, and marijuana. Warren expressed interest in obtaining marijuana from Peek's home.

During the morning of December 8, 2011, Warren and Williams travelled to Tate's

---

[1] Ind. Code § 35-43-2-1(1).

[2] I.C. §§ 35-43-2-1(1) & 35-41-5-2.

home in Williams's car. Williams went inside, convinced Tate to come out, and the three got into Tate's girlfriend's car; Tate was in the driver's seat, Williams was in the front passenger seat, and Warren sat in the back seat. The three then drove to Peek's home in New Palestine.

During the drive, Tate and Williams discussed how they would approach the burglary. Tate agreed to knock on the front door of Peek's residence to see if he was home; if Peek answered the door, Tate would claim that he was looking for a job with Peek's company.

The three arrived at Peek's home; Tate approached the house and knocked on the front door. Peek was sleeping at his home when he heard Tate's knock. Looking down from a second-floor window, Peek saw an individual wearing a dark sweatshirt, but did not recognize Tate. Peek did not answer the door and went back to bed.

Tate and Williams had planned to break into the residence if Peek did not answer. The three men saw one of Peek's neighbors outside, however, and so the three drove away and attempted to find another route to Peek's home. Failing in this, they returned about a half-hour later. This time, Tate drove toward the side of the home, and all three men exited the car. Williams approached a utility door and kicked it open; Williams and Tate entered Tate's home.

Peek awoke to the sound of banging and chairs moving on a tile floor; he realized there were people in his house. Peek ran downstairs. As he reached the foot of the stairs, he saw an individual later identified as Williams holding a gun, shouted, and fled out the front door of his house and around the side of the building. Once outside, Peek saw a gray car with three doors open. He saw two individuals, later identified as Warren and Tate, run

toward the car, get in, and drive away from the scene. Williams fled the property on foot and was arrested soon after, but not before calling and sending text messages to Warren's cellular telephone; Warren and Tate had Williams on the line at the moment of Williams's arrest.

Tate and Warren returned to Indianapolis. Warren was concerned that Tate's girlfriend's vehicle would be traced to the burglary, and so the pair abandoned the car at a construction site and walked to a nearby gas station where they purchased food and drinks. Each then eventually returned home; Tate was arrested the same day.

On December 15, 2011, Captain Kevin Haggard ("Captain Haggard") of the Hancock County Sheriff's Office contacted Warren to question him about his involvement with the burglary of the Peek residence. Warren denied any involvement or even having left Indianapolis on December 8, 2011, but provided Captain Haggard with his cell phone number. The cell phone number was used to track Warren's use of his phone on the day of the burglary, and it was determined that Warren's phone had been used in New Palestine near Peek's home at the time of the burglary.

Based upon this information, on March 23, 2012, Warren was charged with Burglary and Conspiracy to Commit Burglary, and was subsequently arrested. On May 16, 2012, Captain Haggard again interviewed Warren. After Captain Haggard confronted him with the results of the cell phone tower trace, Warren admitted to having been present during the burglary, to having met with Tate and Williams several weeks before to discuss breaking into Peek's home, and to having expressed interest in obtaining marijuana during the break-in.

Before the trial, Warren filed a motion in limine seeking to exclude from evidence

certain statements he had made in his second interview with Captain Haggard. The trial court preliminarily ruled that such evidence should be excluded.

A jury trial was conducted on October 15 and 16, 2013. During the trial, Captain Haggard testified concerning Warren's statements during the May 16, 2012 interview. During Warren's cross-examination of Captain Haggard, Warren sought to elicit testimony that he contended was exculpatory and claimed was necessary to fully convey the content of his statements during the interview. The State objected on hearsay grounds, and, after a brief hearing out of the jury's presence, the trial court granted the State's objection. In its ruling, the court concluded that hearsay rules would be violated by admission of the additional statement. The court also noted that the statements might venture into areas that had been preliminarily excluded by the court's ruling in limine, could be highly prejudicial to Warren's case, and could in any case not properly be admitted into evidence without Warren testifying on his own behalf.

At the conclusion of the trial, the jury found Warren guilty of both Conspiracy to Commit Burglary and Burglary. On November 20, 2012, a sentencing hearing was conducted, during which the trial court entered judgments of conviction against Warren and sentenced him to twelve years imprisonment each for the convictions for Burglary and Conspiracy to Commit Burglary. The two sentences were run concurrently, yielding an aggregate term of imprisonment of twelve years.

This appeal ensued.

5

**Discussion and Decision**

Scope of Cross-Examination

Warren first contends that the trial court improperly limited the scope of his cross-examination of Captain Haggard concerning statements Warren made during their second interview on May 16, 2012.

Trial courts are afforded broad discretion in ruling on evidentiary matters, and we will reverse such a ruling only for an abuse of discretion. Paul v. State, 971 N.E.2d 172, 175 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it. Id. We look only to the evidence that favors the trial court's ruling and any unrefuted evidence in the appellant's favor. Id. However, we will not reverse the trial court's judgment where the court's error was harmless, that is, where the error did not prejudice the substantial rights of a party. Ind. Trial Rule 61; Jones v. State, 982 N.E.2d 417, 429 (Ind. Ct. App. 2013), trans. denied.

A party seeking to appeal an evidentiary ruling must ordinarily preserve that error for appellate review. Watson v. State, 972 N.E.2d 378, 387 (Ind. Ct. App. 2012). Where a party contends that evidence was wrongly excluded, the matter must be preserved for appellate review through an offer of proof that makes known to the court the substance of the evidence for which a party seeks admission. Ind. Evidence Rule 103(a)(2). Failure to preserve a record for appellate review results in waiver. Watson, 972 N.E.2d at 387.

Here, on cross-examination Warren sought to elicit testimony from Captain Haggard concerning allegedly exculpatory statements Warren made during the May 16, 2012

6

interview about not wanting to return to Peek's house. The State objected on hearsay grounds. Warren argued that Captain Haggards's testimony, as elicited upon direct examination by the State, was selective of portions of Warren's statements during the interview. The trial court sustained the State's objection, observing that the hearsay rule required exclusion of the alleged exculpatory statement absent Warren's testimony during the trial. The court also observed that admitting the remainder of Warren's statements during the May 16, 2012 interview would result in the jury being exposed to highly prejudicial evidence that the court had, upon a motion in limine, already ruled as inadmissible under Evidence Rule 404(b).

The State contends that Warren's argument in this regard is waived on appeal for failure to make a proper offer of proof. Our review of the record reveals that the basis for the State's objection and Warren's opposition to that objection are sufficiently clear to have preserved the matter for our review. Accordingly, we cannot conclude that Warren failed to properly preserve this matter for appeal.

We thus turn to the substance of the trial court's ruling. Warren contends that the trial court's ruling, which precluded him from eliciting testimony on cross-examination concerning his own exculpatory statements to police, was an abuse of discretion under the doctrine of completeness. Our supreme court has explained that a defendant who does not testify at trial generally cannot, to enhance his credibility at trial, introduce out-of-court exculpatory statements. Sweeney v. State, 704 N.E.2d 86, 110 (Ind. 1998); Canaan v. State, 541 N.E.2d 894, 904 (Ind. 1989). However, the doctrine of completeness requires that

7

"'[w]hen one party introduces part of a conversation or document, [the] opposing party is generally entitled to have the entire conversation or entire instrument placed into evidence.'" Sweeney, 704 N.E.2d at 110 (quoting McElroy v. State, 553 N.E.2d 835, 839 (Ind. 1990)). The remainder of the document or conversation is "'subject to the general rules of admissibility … and any portions found immaterial, irrelevant, or prejudicial must be redacted.'" Id. (quoting Evans v. State, 643 N.E.2d 877, 881 (Ind. 1994)). This rule "applies even for self-serving hearsay statements." Id. And "'[i]n balancing the potential harm resulting from the introduction of self-serving hearsay against that resulting from the exclusion of relevant portions of prior statements,'" our supreme court has found persuasive Trial Rule 43's policy that "'favors the reception of evidence.'" Id. (quoting McElroy, 553 N.E.2d at 839-40, and citing T.R. 43(A)).

Nevertheless, the court observed that while Warren sought to introduce a potentially exculpatory statement by admitting into evidence more of the content of the interview with Captain Haggard, substantial portions of the interview were subject to exclusion from evidence because of their highly prejudicial nature under Evidence Rule 404(b). Specifically, significant portions of the interview related to Warren's involvement in at least one other burglary committed along with Tate and Williams. And the trial court observed that "[t]here is no one in this room that doesn't know there's a lot of things being left out in that conversation and a lot of them you don't want in." (Tr. at 201.) The trial court thus excluded other portions of Warren's statement in order to prevent the admission of evidence that was highly prejudicial to Warren. Based upon this rationale, we cannot conclude that the trial

8

court's ruling was an abuse of discretion.

Even if the trial court's decision had been erroneous, however, any such error was harmless. For in addition to Captain Haggard's testimony concerning Warren's admission to involvement in the planning and commission of the break-in at Peek's residence, Tate testified that Warren was involved in planning and committing the offense. Tate further testified that he had offered to give false exculpatory evidence on Warren's behalf. Based upon the existence of independent evidence of Warren's guilt, we find as harmless any error that may have arisen from the trial court's ruling.

## Sufficiency of the Evidence

We turn now to Warren's other contention on appeal, that there was insufficient evidence admitted at trial to sustain his convictions for Burglary and Conspiracy to Commit Burglary, as charged.

Our standard of review in such matters is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "'The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Warren was charged with Burglary, as a Class B felony, and Conspiracy to Commit

9

Burglary, also as a Class B felony. To obtain a conviction for Burglary, as charged, the State was required to prove beyond a reasonable doubt that on December 8, 2011, Warren broke into and entered Peek's home, with the intent to commit theft while therein. I.C. § 35-43-2-1(1); App'x at 7. To obtain a conviction for Conspiracy to Commit Burglary, the State was required to prove beyond a reasonable doubt that on December 8, 2011 Warren agreed with Williams and/or Tate to commit Burglary, and that Tate and/or Williams performed an overt act in furtherance of the agreement, specifically that Tate drove to Peek's home and Williams kicked in the back door of the residence. I.C. §§ 35-43-2-1(1) & 35-41-5-2; App'x at 7.

In his brief, Warren specifically addresses the sufficiency of the evidence as to his intent to commit theft, as required by both charged offenses, and as to his "inclusion in a conspiracy to commit burglary." (Appellant's Br. at 10.)

Turning first to the question of intent, whether a defendant had the intent to commit a felony may be inferred from the circumstances, "but some fact in evidence must point to an intent to commit a specific felony." Freshwater v. State, 853 N.E.2d 941, 943 (Ind. 2006) (citations and quotations omitted). Breaking and entering alone are not sufficient to prove the requisite intent to commit burglary; neither is the mere fact of flight, though a combination of factors may establish the requisite intent. Id. Breaking and entering together with flight "are not probative unless tied to some other evidence which is strongly corroborative of the actor's intent." Id. (citations and quotations omitted). Such evidence need not be insurmountable, but must provide a solid basis to support a reasonable inference of intent to commit the underlying felony. Id.

10

Here, Warren admits that he was present during the break-in at Peek's home. He admits as well that he fled from the home along with Tate. During the May 16, 2012 interview with Captain Haggard, Warren admitted that he was interested in obtaining marijuana from Peek's home, and knew that Tate and Williams sought guns, drugs, and money. Tate testified that Warren was present and involved with planning the burglary of Peek's home, and admitted to writing a letter to Warren promising to falsely testify that Warren was asleep in the car throughout the trip to burglarize the home in New Palestine. This is sufficient evidence for a reasonable fact-finder to conclude beyond a reasonable doubt that Warren had the requisite intent to commit Burglary, as charged.

We turn now to Warren's other contention, that there was insufficient evidence to support his conviction for Conspiracy to Commit Burglary. Mere presence at a crime scene or association with a co-conspirator is insufficient to support a conviction for conspiracy. Porter v. State, 715 N.E.2d 868, 870 (Ind. 1999). Yet "'[i]t is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense.'" Id. (quoting Williams v. State, 274 Ind. 94, 96, 409 N.E.2d 571, 573 (1980)). The existence of such an agreement may be proved either by direct or circumstantial evidence. Wright v. State, 690 N.E.2d 1098, 1107 (Ind. 1997).

Again, we note that Warren admitted to Captain Haggard that he was present at the meeting during which Tate and Williams planned the burglary of Peek's home, that he was involved in the meeting, and that he was interested in obtaining marijuana from Peek's residence. Tate testified that Warren was present, and Tate's offer to provide false testimony

11

concerning Warren's involvement in the burglary permits the inference that Warren and Tate were both aware that Warren was not merely a bystander. And there was no evidence admitted at trial that Warren had second thoughts or attempted in any other way to rescind his assent to the plan to burglarize Peek's home.[3] We conclude that this evidence, taken together with the inferences flowing from it that favor the verdict, was sufficient to support Warren's conviction for Conspiracy to Commit Burglary. We therefore find no reversible error, and affirm Warren's convictions.

## Conclusion

The trial court did not abuse its discretion when it ruled as inadmissible Warren's allegedly exculpatory hearsay statement during his interview with police. There was sufficient evidence to support Warren's convictions for Burglary and Conspiracy to Commit Burglary.

Affirmed.

MAY, J., and BRADFORD, J., concur.

---

[3] Even if the trial court had admitted Warren's exculpatory statement concerning his desire to abandon his participation in the conspiracy to burglarize Peek's home, we have already concluded that the exclusion of that evidence was harmless error. And our standard of review in sufficiency matters would preclude us from considering that evidence in any case, as it is does not support the jury's verdict.